IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, *as Trustee*, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-517-ECM |
| | ) | [WO] |
| STEVEN CLAYTON THOMASON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This matter is before the Court *sua sponte* concerning whether Attorney K. David Sawyer ("Sawyer"), counsel for Steven Clayton Thomason ("Thomason"), should be sanctioned for filing written submissions without an objectively reasonable basis and which hamper enforcement of an injunction previously issued by the Court.

This civil case arises out of a years-long dispute between Deutsche Bank National Trust Company ("Deutsche Bank") and Thomason concerning certain real property in Montgomery, Alabama, which has been the subject of eight separate actions before this Court. As explained further below, Sawyer represented Thomason during the third federal lawsuit against Deutsche Bank concerning the real property. On September 21, 2022, during Thomason's fifth federal lawsuit against Deutsche Bank concerning the real property, the Court declared Thomason a vexatious litigant and enjoined him from "filing in this Court[] any suit against Deutsche Bank or other individuals and/or entities with

whom he claims to be aggrieved pertaining to the subject property, its mortgage, and/or its foreclosure." (Doc. 22 at 19–20 in *Steven Clayton Thomason v. Deutsche Bank*, 2:22-cv-52-ECM-SMD (M.D. Ala. Sept. 21, 2022)).

On August 13, 2024, despite the Court's injunction, Thomason, acting *pro se*, removed to this Court a state court action brought by Deutsche Bank to eject Thomason from the real property. (Doc. 1). On November 6, 2024, the Magistrate Judge recommended that Deutsche Bank's motion to remand (doc. 4) be granted on multiple independent grounds, the first being that Thomason's removal violated the Court's injunction. (Doc. 14).

Sawyer then appeared on Thomason's behalf (doc. 15) and filed objections to the Recommendation. (Doc. 18). The Court overruled the objections, adopted the Magistrate Judge's Recommendation, and remanded the case to state court. (Doc. 20). Despite the fact that the Court's remand order divested the Court of jurisdiction, and despite the undisputed existence of the injunction, Sawyer filed a motion to reconsider the remand order (doc. 21), which the Court denied (doc. 22).

On December 5, 2024, the Court entered an order explaining that the objections and motion to reconsider appeared to lack a "legal or factual basis, and also amount[ed] to a further violation of the Court's injunction and conduct that abuses the judicial process." (Doc. 27 at 3). The Court ordered Sawyer to show cause in writing "why he should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(b) and (c), 28 U.S.C. § 1927, and/or under the Court's inherent power to assess sanctions for bad faith conduct or

conduct that abuses the judicial process." (*Id.* at 3–4). The Court also set a hearing on the matter.

Sawyer filed a written response on December 19, 2024 (doc. 36), and the Court held a hearing on February 4, 2025. The matter is ripe for adjudication. For the following reasons, the Court concludes that sanctions against Sawyer are appropriate pursuant to Rule 11 and the Court's inherent authority.

## II. BACKGROUND

Since at least 2012, Thomason has been litigating disputes against Deutsche Bank and others concerning the loan, mortgage, default, and/or foreclosure on property located at 901 Seibles Road, Montgomery, Alabama (the "property"). Below, the Court briefly summarizes the eight separate federal actions between Thomason and Deutsche Bank concerning the property. This case is the seventh and is discussed below under the heading *Thomason VII*.

***Thomason I***: In July 2012, Thomason filed his first federal lawsuit about the loan and mortgage on the property against several Defendants, including Deutsche Bank. (Doc. 1 in *Thomason v. One West Bank, FSB, Indy Mac Bank, et al.*, 2:12-cv-604-MHT) ("*Thomason I*"). In March 2018, the Court granted summary judgment in favor of the Defendants. (Doc. 214 in *Thomason I*). Thomason appealed, but the appeal was dismissed for failure to prosecute because he failed to pay the filing fee. This Court then denied Thomason's motion for relief from final judgment. (Doc. 243 in *Thomason I*).

***Thomason II***:  In April 2019, Thomason filed another lawsuit against Deutsche Bank and others in Montgomery County Circuit Court, which the Defendants removed to this Court. (Doc. 1 in *Thomason v. Ocwen Loan Servicing LLC, et al.*, 2:19-cv-256-ECM-SMD) ("*Thomason II*").  Thomason again asserted claims about the loan and default on the property.  The Federal Deposit Insurance Company ("FDIC") was a named party. (*See, e.g.*, doc. 1 at 2–4 in *Thomason II*).  This Court dismissed the case with prejudice, finding that Thomason's claims were barred by res judicata. (Docs. 20, 21 in *Thomason II*).  Thomason appealed, but the appeal was again dismissed because of his failure to pay the filing fee.

***Thomason III***:  In April 2020, Thomason filed a third action against Deutsche Bank in Montgomery County Circuit Court, claiming that Deutsche Bank illegally foreclosed on the property. (Doc. 1-1 in *Thomason v. Deutsche Bank Nat'l Tr. Co.*, 2:20-cv-292-WKW-KFP) ("*Thomason III*").  Deutsche Bank removed the case to this Court.  Although Thomason filed the state court action *pro se*, Sawyer represented Thomason in the litigation in this Court.

The Court found that Thomason's claims were barred by res judicata and failed to state a claim under Rule 12(b)(6). (Doc. 26 in *Thomason III*).  Thus, the Court dismissed the case with prejudice and entered final judgment. (Docs. 26, 27 in *Thomason III*).  Thomason appealed, and the Eleventh Circuit initially dismissed the appeal because of Thomason's failure to prosecute.  After reinstating Thomason's appeal, the Eleventh Circuit affirmed in part and dismissed in part. *See Thomason v. Deutsche Bank Nat'l Tr.*

*Co.*, 2022 WL 4296926 (11th Cir. Sept. 19, 2022) (per curiam); (doc. 46-1 in *Thomason III*). The Eleventh Circuit affirmed this Court's conclusion that Thomason's claims in *Thomason III* were barred by res judicata and failed to state a claim under Rule 12(b)(6). *Thomason*, 2022 WL 4296926, at *3 & n.1. The Eleventh Circuit dismissed as moot Thomason's request for an injunction pending appeal preventing Deutsche Bank from foreclosing on the property, explaining that the property was sold in September 2021 following a foreclosure. *Id.* at *3.

*Thomason IV*: In August 2021, Thomason, acting *pro se*, brought yet another lawsuit against Deutsche Bank concerning the property in Montgomery County Circuit Court. (Doc. 1-1 in *Thomason v. Deutsche Bank Nat'l Tr. Co.*, 2:21-cv-650-ECM-SMD) ("*Thomason IV*"). After removing the case to this Court, Deutsche Bank filed a motion to dismiss, arguing that Thomason's claims were barred by res judicata. After the parties engaged in jurisdictional discovery, the Court denied Thomason's motions to remand. (Doc. 33 in *Thomason IV*). Thomason then filed a notice of voluntary dismissal under Rule 41 (doc. 34 in *Thomason IV*), and the Court acknowledged the dismissal of the case without prejudice in an August 1, 2022 Order (doc. 35 in *Thomason IV*).

*Thomason V*: In December 2021, Thomason, acting *pro se*, brought an action to set aside the foreclosure against Deutsche Bank in Montgomery County Circuit Court. (Doc. 1-1 in *Thomason v. Deutsche Bank Nat'l Tr. Co.*, 2:22-cv-52-ECM-SMD) ("*Thomason V*"). Deutsche Bank removed the case to this Court. On September 21, 2022, this Court denied Thomason's motion to remand and granted Deutsche Bank's motion to

dismiss. (Doc. 22 in *Thomason V*).  The Court once again concluded that Thomason's claims were barred by res judicata. (*Id.* at 14–18 in *Thomason V*).  The Court also declared Thomason a vexatious litigant and enjoined him from "filing in this Court[] any suit against Deutsche Bank or other individuals and/or entities with whom he claims to be aggrieved pertaining to the subject property, its mortgage, and/or its foreclosure." (Doc. 22 at 19–20 in *Thomason V*).  Thomason did not appeal.

**Thomason VI**: In July 2023, Deutsche Bank filed an ejectment action against Thomason in Montgomery County Circuit Court, alleging that it had served Thomason and all property residents with a Notice to Vacate on February 8, 2022, but that Thomason and the residents refused to vacate the property. (Doc. 1-1 in *Thomason v. Deutsche Bank Nat'l Tr. Co.*, 2:23-cv-543-ECM-CWB) ("*Thomason VI*").  Thomason, acting *pro se*, removed the case to this Court, purportedly based on a counterclaim against Deutsche Bank. (Doc. 1 at 1–3 in *Thomason VI*).  This Court concluded that the removal was not timely and remanded the case to the Montgomery County Circuit Court. (Doc. 19 in *Thomason VI*). Thomason filed a motion to reconsider (doc. 20 in *Thomason VI*), which the Court denied, explaining that the Court no longer had jurisdiction following remand (doc. 21 in *Thomason VI*).

**Thomason VII (this case)**:  On August 13, 2024, Thomason, acting *pro se*, once again removed the same ejectment action to this Court, again purportedly based on a counterclaim against Deutsche Bank. (Doc. 1).  Thomason asserted jurisdiction based on his daughter's purported claims that Deutsche Bank's foreclosure on the property violated

the Servicemembers Civil Relief Act and 42 U.S.C. § 1981.  Thomason also alleged that removal was proper pursuant to the Financial Institution Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1819 ("FIRREA"), because Thomason and his daughters were asserting a counterclaim, which was not filed in state court, against FDIC. The Magistrate Judge recommended that the case be remanded on multiple independent grounds. (Doc. 14).  First, the Magistrate Judge concluded that Thomason's removal violated the Court's September 21, 2022 Injunction in *Thomason V*. (*Id.* at 4–5).  Second, the Magistrate Judge concluded that removal was not timely under 28 U.S.C. § 1446(b)(3). (*Id.* at 5–6).  Third, the Magistrate Judge concluded that removal was not proper because a nonparty may not remove a case, but the notice of removal invoked claims asserted by Thomason's daughter, a nonparty. (*Id.* at 6–7).  Finally, the Magistrate Judge concluded that removal was not proper based on the counterclaim against FDIC because a counterclaim cannot supply a basis for removal. (*Id.* at 7–8) (citing *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019)).  The Magistrate Judge also recommended that fees be awarded to Deutsche Bank pursuant to 28 U.S.C. § 1447(c) because Thomason's removal lacked an objectively reasonable basis. (*Id.* at 9).

Sawyer then entered a notice of appearance on Thomason's behalf (doc. 15) and filed objections to the Magistrate Judge's recommendation (doc. 18).  In the objections, Sawyer argued that the Court had subject matter jurisdiction because FDIC had been a party in an earlier case before this Court, *Thomason II*. (*Id.* at 1–4).  Sawyer also argued that Deutsche Bank's foreclosure on the property violated FIRREA's statute of limitations.

(*Id.* at 4–5). Sawyer also contended that Thomason's daughters were necessary parties. (*Id.* at 5–6). None of these arguments, however, rebutted or even addressed the Magistrate Judge's conclusions that Thomason's removal violated the Court's injunction or that the removal was untimely. Sawyer also did not object to the Magistrate Judge's finding that the removal lacked an objectively reasonable basis or the award of fees to Deutsche Bank. This Court overruled the objections, remanded the case to Montgomery County Circuit Court, and awarded Deutsche Bank fees in the amount of $7,429.50. (Doc. 20 at 4). Thomason, through Sawyer, then filed a motion to reconsider (doc. 21), which the Court denied, explaining that the Court lacked jurisdiction following remand (doc. 22). The motion to reconsider argued only that FDIC was a necessary party which, according to Sawyer, conferred subject matter jurisdiction on this Court. (Doc. 21). It still did not address the Court's injunction or the timeliness of removal.[1]

On December 5, 2024, the Court ordered Sawyer to show cause in writing, on or before December 19, 2024, "why he should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(b) and (c), 28 U.S.C. § 1927, and/or under the Court's inherent power to assess sanctions for bad faith conduct or conduct that abuses the judicial process." (*Id.* at 3–4). The Court also set a hearing on the matter, which was later continued until February 4, 2025, at Sawyer's request (docs. 28, 32).

---

[1] Thomason, through Attorney Sawyer, filed a notice of appeal on December 5, 2024. (Doc. 23). The appeal remains pending in the Circuit.

On January 23, 2025, Deutsche Bank filed a motion for sanctions/contempt. (Doc. 42).  Deutsche Bank explained that the Montgomery County Circuit Court set a hearing in the ejectment action for January 27, 2025, on all pending motions, and that on January 23, 2025, Thomason filed a *pro se* notice of removal in state court—his third removal of the same ejectment action.  This removal is discussed briefly below under the *Thomason VIII* heading.  When the motion for sanctions was filed, Deutsche Bank could not determine whether Thomason had actually filed a notice of removal in this Court.  Deutsche Bank asserted that if Thomason did file a third notice of removal, Thomason "should be sanctioned for continuing to file baseless pleadings in violation of this Court's injunction and unequivocal orders specifying why removal is improper." (Doc. 42 at 2).  This Court also set Deutsche Bank's motion for a hearing and ordered Thomason to show cause why he should not be sanctioned. (Doc. 43).[2]  The Court added a pre-filing screen requirement to the existing injunction prohibiting Thomason from filing or removing any action related to the real property. (Doc. 43 at 3–4).

***Thomason VIII***:  On January 23, 2025, Thomason removed—for the third time—the state court ejectment action Deutsche Bank filed in Montgomery County Circuit Court. (Doc. 1 in *Thomason v. Deutsche Bank Nat'l Tr. Co.*, 2:25-cv-70-ECM-KFP) ("*Thomason VIII*").  In the notice of removal, Thomason asserted that the case was related to *Thomason I*, which was dismissed almost seven years earlier.  On January 24, 2025, this Court remanded the case back to Montgomery County Circuit Court, concluding that Thomason

---

[2] Deutsche Bank's motion for sanctions/contempt (doc. 42) is addressed in a separate order.

removed the case in violation of the Court's September 21, 2022 injunction, in bad faith, and without an objectively reasonable basis. (Doc. 2 in *Thomason VIII*).

### III.  LEGAL STANDARDS

The Court's authority to sanction parties and/or their lawyers for litigation misconduct derives from several sources, including its inherent authority and Rule 11 of the Federal Rules of Civil Procedure.[3]

First, the Court may impose sanctions pursuant to its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991).  "A court's inherent power is 'governed . . . by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Chambers*, 501 U.S. at 43–45)).  "This power," however, "must be exercised with restraint and discretion." *Id.* (quoting *Chambers*, 501 U.S. at 43–45)).  "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  "[T]he inherent-powers standard is a subjective bad-faith standard." *Purchasing Power*, 851 F.3d at 1223.  "[I]n the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a

---

[3] Because the Court declines to impose sanctions pursuant to § 1927, the Court does not set forth the legal standard applicable to such sanctions.

frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes*, 158 F.3d at 1214 (citation omitted).

Additionally, Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b) (emphasis added). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorneys, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). The Court may impose Rule 11 sanctions *sua sponte*. FED. R. CIV. P. 11(c)(3).

Rule 11 "incorporates an objective standard" which requires the Court to determine "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *see also Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("The objective standard for testing conduct under Rule 11 is 'reasonableness under the

circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." (citation omitted)).  For the Court to impose Rule 11 sanctions *sua sponte*, the offending conduct must be "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003).[4]  The Eleventh Circuit has "not elaborated on the 'akin to contempt' standard," *McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851, 853

---

[4] The undersigned respectfully submits that *Kaplan*'s conclusion and reasoning regarding the "akin to contempt" standard is incorrect because it rests on a mistaken reading of both Rule 11 and out-of-circuit case law.

First, the *Kaplan* court stated that the Advisory Committee Notes to the 1993 Amendment ("Notes") provided that "[t]he initiating court must employ . . . a higher standard ('akin to contempt') than in the case of party-initiated sanctions." 331 F.3d at 1255 (parenthetical in original).  However, that is not what the Notes say.  They say:  "Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative."  In this Court's view, the Notes' reference to "akin to contempt" merely described the likely circumstances under which *sua sponte* Rule 11 sanctions are initiated; it did not announce a standard for imposing such sanctions. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 94–95 (2d Cir. 2003) (Underhill, D.J., dissenting) (opining that the Notes' show cause language is "predictive, not restrictive; the reference to contempt describes the seriousness of the conduct likely to prompt a court to issue a show cause order initiating sanctions proceeding, not the *mens rea* necessary before sua sponte sanctions can permissibly be imposed").  The Court finds Judge Underhill's dissenting opinion in *In re Pennie* persuasive and instructive on this issue.

Additionally, the *Kaplan* court stated that it was "join[ing]" other circuits "in their 'akin-to-contempt' interpretation," citing decisions from the Fourth and Ninth Circuits. 331 F.3d at 1255–56.  However, neither of those circuits held that an "akin-to-contempt" standard applies when a court acts sua sponte under Rule 11. *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (noting that "[t]he Advisory Committee contemplated that a sua sponte show cause order would only be used 'in situations that are akin to a contempt of court,'" but never mentioning "akin to contempt" in its analysis); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (explaining that the fact that a district court decided to award sanctions on a party's motion "does not necessarily mean that the court would . . . impose sanctions on its own motion for the same conduct," citing the Advisory Committee Notes).

The Court applies the "akin to contempt" standard here because binding precedent requires it.  The Court hopes that in an appropriate case, the Eleventh Circuit will revisit its precedent on this issue and consider adopting the reasoning and conclusion from Judge Underhill's dissent in *In re Pennie*.

(11th Cir. 2010) (per curiam),[5] and it has not decided whether the standard requires a finding of "subjective" bad faith, *see Kaplan*, 331 F.3d at 1256.[6]

Finally, despite the Court's lack of subject matter jurisdiction over this case, the Court nonetheless has the authority to impose sanctions. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("[W]e . . . hold that a district court may address a sanctions motion based on its inherent power or § 1927 even if it lacks jurisdiction over the underlying case."); *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992) (explaining that Rule 11 sanctions are a "collateral matter" and stating "there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim, and to allow the courts to impose Rule 11 sanctions in the event of their failure to do so").

## IV. DISCUSSION

The issue before the Court is whether Sawyer's filing the objections to the Magistrate Judge's Recommendation (doc. 18), the motion to reconsider (doc. 21), or both

---

[5] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges these cases are nonprecedential, the Court finds them persuasive.

[6] A subjective bad faith standard strikes this Court as inconsistent with the Eleventh Circuit's pronouncements that Rule 11 incorporates an objective standard. This subjective bad faith standard also appears inappropriate because "[a]s originally drafted, Rule 11 set out a subjective standard, but the Advisory Committee determined that this standard was not working" and thus the Committee deleted the subjective standard from the Rule. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 539 (1991). But because this Court concludes that Sawyer's conduct amounts to subjective bad faith for purposes of inherent-authority sanctions, the Court's conclusion that Rule 11 sanctions are also appropriate would be the same even if *sua sponte* Rule 11 sanctions required a finding of subjective bad faith.

is sanctionable pursuant to Rule 11, the Court's inherent authority, or both; and if so, what sanction(s) should be imposed.

As explained above, Sawyer was given written notice that the Court was considering sanctioning him for filing the objections (doc. 18) and motion to reconsider (doc. 21). Additionally, Sawyer was given the opportunity to respond in writing and in person at the February 4, 2025 show cause hearing, and he availed himself of those opportunities.

## A.    Whether Sanctions are Appropriate

Having reviewed Sawyer's written response and having considered his responses at the hearing, the Court finds that Sawyer filed the objections and motion to reconsider in bad faith and without an objectively reasonable basis, that his conduct is akin to contempt. Since September 2022, an injunction has been in effect preventing Thomason—who the Court declared a vexatious litigant—from filing any actions against Deutsche Bank relating to the property. At the show cause hearing, Sawyer acknowledged that when he appeared on Thomason's behalf in this case, he knew the injunction was in place. The injunction's existence was also readily apparent from the Recommendation, which recommended remand on the independent basis that Thomason's removal of the case violated the injunction. Sawyer also acknowledged that the injunction and the untimeliness of Thomason's removal were independent bases for the Magistrate Judge's Recommendation that the case be remanded. Nonetheless, Sawyer filed objections which did not rebut or even address the injunction or timeliness. At the hearing, Sawyer did not dispute that, even if the Court had sustained all his objections, it would not have changed the

14

Recommendation that the case be remanded for two independent reasons:  the removal violated the Court's injunction, and the removal was untimely.  Consequently, on this record, the objections were futile, and reasonable attorneys in Sawyer's position would have known they were futile and would not have filed them.  Not only that, but Sawyer's submission of futile objections operated to further thwart enforcement of the Court's injunction, which further supports a finding of bad faith. *See Barnes*, 158 F.3d at 1214 ("A party also demonstrates bad faith by . . . hampering enforcement of a court order.").  On this record, the Court finds that a reasonable attorney in Sawyer's position could not have believed he was legally justified in filing the objections, and his conduct was objectively unreasonable, akin to contempt, and amounts to bad faith. *See Kaplan*, 331 F.3d at 1255; *Barnes*, 158 F.3d at 1214.  Moreover, under the circumstances of this case, the Court finds that Sawyer's conduct was "so egregious that it could only [have been] committed in bad faith." *See Purchasing Power*, 851 F.3d at 1224–25 (citing *Roadway Express*, 447 U.S. at 767).

At the hearing, Sawyer acknowledged the existence of the injunction but dismissed its relevance on two principal grounds:  (1) *Sawyer* did not file the lawsuit or remove it, and (2) he believed that his ethical obligations to Thomason compelled him to raise all objections which had arguable merit in order to preserve those issues.  That Sawyer did not file the lawsuit or remove it has little relevance to the Court's assessment of whether sanctions are warranted.  When he filed the objections, Sawyer knew the injunction was in effect, and he knew that the Magistrate Judge recommended remand on the independent

15

basis that the removal violated the injunction. Knowing these facts, Sawyer nonetheless filed objections which, even if sustained, would not have changed the Recommendation's conclusion that the case was due to be remanded, and which further hampered enforcement of the Court's injunction. At the hearing, Sawyer did not dispute that his objections would not have changed the Recommendation's conclusion, but he insisted that he felt ethically obligated to raise arguments on his client's behalf that he believed were meritorious. While Sawyer unquestionably has ethical obligations to his clients, he is also an officer of the Court. And while he may have subjectively found legal merit to the arguments raised in the objections, he knew or should have known both that the objections were futile, and that they were made in the face of a finding that his client is a vexatious litigant *and* an injunction prohibiting litigation in this Court concerning the very subject matter about which he was arguing. Sawyer's responses did not adequately address why the objections were justified given the undisputed existence of the Court's injunction and the Recommendation's unobjected-to findings that the removal violated the injunction and was untimely. Moreover, Sawyer did not take any corrective action or acknowledge any wrongdoing, which may have somewhat mitigated his misconduct. The Court thus concludes that sanctions are appropriate pursuant to Rule 11 and the Court's inherent authority because Sawyer's conduct was objectively unreasonable, akin to contempt, and undertaken in bad faith.

Sawyer is also due to be sanctioned pursuant to Rule 11 and the Court's inherent authority for the additional and independent reason that he filed a motion to reconsider

16

which lacked an objectively reasonable basis in law or fact and further thwarted enforcement of the Court's injunction. (*See* doc. 21). Sawyer filed the motion to reconsider after the Court had adopted the Magistrate Judge's findings that the removal violated the injunction and was untimely, and after the Court had remanded the case. In its Opinion adopting the Recommendation, this Court made clear that the objections regarding absent "necessary" parties, including FDIC, had no bearing on whether the removal violated the injunction or whether the removal was timely. (Doc. 20 at 3–4). And yet Sawyer filed a motion to reconsider in which he raised arguments solely about FDIC's status as a party and which did not address the injunction or timeliness, which further hampered enforcement of the injunction, and which the Court lacked jurisdiction to address based on well-settled law. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[] . . . ."); *Bender v. Mazda Motor Corp.*, 657 F.3d 1200, 1204 (11th Cir. 2011) (affirming the district court's denial of a party's Rule 60(b) motion to reconsider a remand order, explaining that "even if the district court erroneously remanded the case to state court, § 1447(d) prohibits the district court from reconsidering its remand order because the district court no longer had

jurisdiction over the case").[7]  Sawyer's filing the motion to reconsider was even more indefensible than the objections because, in overruling the objections, the Court pointed out what was already obvious to any reasonable lawyer:  his objections would not change the Recommendation's conclusion that the case was due to be remanded.  Nonetheless, Sawyer persisted in raising irrelevant and futile arguments—doubly futile now that the Court had remanded the case and lacked jurisdiction to reconsider that remand.  The Court takes Sawyer at his word that, until this Court denied his motion to reconsider, he was not subjectively aware of the precedent holding that a district court lacks jurisdiction over a motion to reconsider after the court remands a case.  Nonetheless, the Court concludes that reasonable attorneys in his position would have been aware of this precedent and thus would have declined to file the motion to reconsider for that reason alone.  Additionally, and more significantly, reasonable lawyers in Sawyer's position would not have filed the motion to reconsider because, legally and factually, it could not have changed the outcome (remand), and because it further hampered enforcement of this Court's injunction against a vexatious litigant.  On this record, the Court concludes that Sawyer's persistence in

---

[7] The Court acknowledges that § 1447(d) "is tightly circumscribed to cover only remand orders within the scope of 28 U.S.C. § 1447(c)," based on either (1) a district court's lack of subject matter jurisdiction, or (2) a timely motion to remand the case based on a non-jurisdictional defect in removal. *Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009) (citation omitted); *Hill v. Nat'l Ins. Underwriters, Inc.*, 641 F. App'x 899, 903 (11th Cir. 2016).  Here, Deutsche Bank timely filed a motion to remand based on, among other grounds, the removal's untimeliness under § 1446(b)(3) (*see* doc. 4 at 2, 6–8), which is a non-jurisdictional defect, *see Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999).  In its remand order, this Court adopted the Magistrate Judge's Recommendation, including its finding that the removal was untimely. (Doc. 20 at 3–4).  Consequently, this Court's remand order fits squarely "within the scope of 28 U.S.C. § 1447(c)" and was not reviewable. *See Corp. Mgmt. Advisors, Inc*, 561 F.3d at 1296 (citation omitted).

raising irrelevant and futile arguments in the motion to reconsider was objectively unreasonable, akin to contempt, and undertaken in bad faith.

As noted above, the Eleventh Circuit has "not elaborated on the 'akin to contempt' standard" for *sua sponte* Rule 11 sanctions. *See McDonald*, 391 F. App'x at 853. However, the Eleventh Circuit has upheld a district court's *sua sponte* imposition of Rule 11 sanctions where an attorney filed a "factually and legally inaccurate" writ of execution where no judgment had been entered. *iParametrics, LLC v. Howe*, 522 F. App'x 737, 739 (11th Cir. 2013) (per curiam). The court explained that "[t]he district court was entitled to find that [the attorney's] conduct was 'akin to contempt,'" noting that the attorney "could readily have discovered and corrected his pleadings, but instead his misrepresentations went undetected for over a year." *Id.* (citation omitted). "The district court did not abuse its discretion by formally reprimanding [the attorney] based on the potential seriousness of his misrepresentation, the extent of his negligence, and his delays in undertaking corrective measures." *Id.* at 740. The Eleventh Circuit also upheld an award of *sua sponte* Rule 11 sanctions against a party who "fil[ed] pleadings for the improper purpose of harassing the defendants and present[ed] claims that were frivolous and had no legal or factual support." *McDonald*, 391 F. App'x at 853. Considering the frivolity of Sawyer's arguments across two separate filings which hampered enforcement of the Court's injunction against a vexatious litigant, the Court finds that Sawyer knowingly acted with reckless disregard for this Court's injunction and the law. Thus, the Court finds that Sawyer's conduct is "akin

to contempt." Consequently, sanctions are warranted pursuant to Rule 11 and the Court's inherent authority.

**B.    What Sanctions are Appropriate**

The Court now addresses what sanctions are appropriate. Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include . . . an order to pay a penalty into court." FED. R. CIV. P. 11(c)(4). The Advisory Committee Notes to the 1993 Amendment outline "a variety of possible sanctions" for Rule 11 violations, "such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities . . . , etc." Sanctions may also include "requiring the errant attorney to circulate the court's opinion finding him in violation of Rule 11 to every member of his firm." *Donaldson v. Clark*, 819 F.2d 1551, 1557 n.7 (11th Cir. 1987) (en banc). In determining the sanction to impose, the Court may consider the following factors:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . . .

FED. R. CIV. P. 11 advisory committee's note to 1993 amendment; *accord McDonald*, 391 F. App'x at 853 (stating that courts should consider the above factors in determining an appropriate sanction).  As for inherent power sanctions, "[s]uch sanctions include assessment of attorneys' fees and costs, disqualification of counsel, and monetary penalties payable to the clerk of the court." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) (citation omitted).

The Court finds that Sawyer's conduct here was at best reckless and at worst willful; it was not an isolated event but instead occurred across two separate filings; it caused the Court to expend time and resources to address his objections and motion to reconsider; and Sawyer is trained in the law.  Further, Sawyer knowingly acted in the face of the Court's undisputed and unchallenged injunction against a vexatious litigant, and his conduct further hampered enforcement of the injunction.  Sawyer also did not take any corrective action or acknowledge any wrongdoing, which may have mitigated his misconduct to some extent. *See* FED. R. CIV. P. 11 advisory committee's note to 1993 amendment ("[C]orrective action . . . should be taken into account in deciding what—if any—sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.").  However, the Court acknowledges that there is no evidence or indication that Sawyer's conduct was intended to injure, which counsels against more severe sanctions.

Considering the totality of the circumstances and the factors identified in the Advisory Committee's Note, the Court in its discretion concludes that the following sanctions are appropriate:  a formal reprimand and a requirement that Sawyer circulate this

Opinion to all attorneys at his law firm.  This Opinion constitutes a formal reprimand of Attorney K. David Sawyer for filing objections to the Magistrate Judge's Recommendation (doc. 18) and a motion to reconsider the Court's remand order (doc. 21) in bad faith and in violation of Rule 11.  The Court finds that these sanctions are sufficient to deter such conduct by Sawyer in the future and to deter similar conduct by other litigants. *See* FED. R. CIV. P. 11(c)(4).

## V.  CONCLUSION

For the reasons explained above, the Court finds that Sawyer acted in bad faith and violated Rule 11 when he filed objections to the Magistrate Judge's Recommendation (doc. 18) and a motion to reconsider the Court's remand order (doc. 21) with no objectively reasonable basis and which hampered enforcement of a Court Order.  Accordingly, pursuant to Rule 11 and the Court's inherent authority, the Court FORMALLY REPRIMANDS Attorney K. David Sawyer for filing the objections and motion to reconsider.  Additionally, it is ORDERED that **on or before February 26, 2025**, Sawyer shall circulate this Opinion to all attorneys in his firm and file with this Court a certification of that circulation.

The Clerk of the Court is DIRECTED to send a copy of this Opinion to all District Judges and Magistrate Judges of this Court.

DONE this 19th day of February, 2025.

_____/s/ Emily C. Marks_____

EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE